UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARIA GRISSOM and VIRGIL GRISSOM, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>INGLES MARKETS, INC., )<br>)<br>Defendant. ) | No. 3:07-CV-60<br>(VARLAN/GUYTON) |

## **MEMORANDUM AND ORDER**

This civil action is before the Court pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Order [Doc. 37] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of the plaintiff's Motion to Compel. [Doc. 32] On September 8, 2008, the parties appeared before the Court for a hearing on the instant motion. Attorneys Lisa P. Binder and Roy P. Neuenschwander appeared on behalf of the plaintiffs and attorneys Benjamin Holland and Kim Cacheris appeared on behalf of the defendant. After the hearing, the Court took the motion under advisement and it is now ripe for adjudication.

The plaintiffs move the Court to compel the defendant to provide full and complete responses to outstanding discovery requests. The defendants oppose the motion, arguing that the discovery requests at issue are vague, overly broad, unduly burdensome, and irrelevant. Rule 26 of the Federal Rules of Civil Procedure states, in pertinent part, that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the

> court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. See Lewis v. ACB Business Services, Inc., 135 F.3d 389, 402 (6th Cir. 1998). Nevertheless, discovery does have "ultimate and necessary boundaries," and "discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

In addition, courts have held that because of the extremely private nature of personnel files, courts generally do not order production of such files except upon a compelling showing of relevance by the requesting party. Miller v. Federal Express Corp., 186 F.R.D. 376, 384 (W.D. Tenn. 1999). To be compelling, the requesting party must demonstrate that the value of the information outweighs the privacy interests of the affected parties. Onwuka v. Federal Express Corp., 178 F.R.D. 508 (D. Minn. 1997). While not binding on this Court, the Court finds these cases persuasive and appropriate to the instant motion.

The plaintiffs' motion identifies four different requests to which it seeks responses. Specifically, the plaintiffs seek to obtain: (1) the personnel files of any employee terminated within one year the plaintiff for the violation of company policy; (2) the specific reasons for the termination of all persons terminated for the violation of company policy from June 1, 2005, to June 1, 2007; (3) all annual stop loss reports generated by Benefit Management Service and provided to defendant from 2002 to 2006; (4) information showing whether the name of Ms. Pallas has appeared on any stop-loss or high claims reports. The plaintiffs originally also sought additional information relating to a law suit regarding Lisa Day, but during the hearing the parties advised the Court that issue was

2

now moot. In addressing these requests the Court must determine whether the discovery should be allowed, and, if so, whether the discovery should be company-wide, or limited to a specific store or region.

In determining whether the discovery should be allowed, the Court finds that the requests at issue are relevant to the plaintiffs' claims of discrimination, as the requested informations tends to make the existence of a fact of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Specifically, the Court finds that the requested discovery is relevant to the plaintiffs' claims that defendant has a pattern and practice of discriminating against employees on the basis of an employee's, or the family members of the employee, disability and the subsequent cost created by their participation in the defendant's health insurance program. The Court finds that the value of the information requested outweighs the privacy interests of the affected parties. The Court further finds that the privacy interests of any affected individuals can be adequately safeguarded through the use of an appropriate protective order. Thus, the Court finds that the plaintiffs should, to some extent, be allowed to obtain the discovery in question.

Thus, the next issue the Court must resolve is the scope of the allowed discovery. The plaintiffs seek a company-wide response to their requests. The defendant opposes the request, arguing that the discovery should be limited to the store where Defendant worked. Based on the record before the Court, it appears that the individuals responsible for the decision to terminate Mrs. Grissom included Mrs. Grissom's local Store Manager, the District Manager, the District Meat Supervisor, and a Loss Prevention Officer. Plaintiffs argue that these four individuals consulted with Cindy Brooks, a national Vice-President of Human Resources, and thus argue that company-

3

wide discovery is appropriate.

In addressing the scope of discovery, the Court finds the case of Moore v. Abbott Labs, No. 2:05-cv-1065, 2007 U.S. Dist. LEXIS 88649, at *8-11 (S.D. Ohio Nov. 20, 2007), persuasive. The Moore court, in addressing whether company-wide discovery should be allowed in an employment discrimination case, held that:

> When dealing with a small employer who operates from a single location and has a relatively uniform work force, company-wide discovery may well be appropriate. On the other hand, no one would seriously argue that all of the hiring decisions made by a large national or multi-national company with respect to every geographic location and every business line which the company pursues should be fair game for discovery in a single-plaintiff case. Thus, the [c]ourt must necessarily draw a line between company-wide discovery which is appropriate (including limitations on time, geography, and types of positions or hiring decisions) and that which is not.
>
> There are two related bases for limiting the scope of the type of discovery involved in this case. One requires the [c]ourt to draw a line between evidence which is falls within the general scope of discovery described in Federal Rule 26(b)(1) and evidence which does not. That Rule allows a party to obtain discovery of any matter relevant to the claim or defense of any party. It clarifies that relevant information need not be admissible at trial so long as it is "reasonably calculated to lead to the discovery of admissible evidence."
>
> As the last sentence of Rule 26(b)(1) states, however, "[a]ll discovery is subject to limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." In this context, the most significant of those limitations is the one contained in Rule 26(b)(2)(iii), which states that discovery should not be permitted if "the burden or expense of the proposed discovery outweighs its likely benefit, taking into the account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of a proposed discovery in resolving the issues." This limitation, which recognizes that the court may act in a common sense fashion to circumscribe discovery to that which is reasonable and necessary to serve the purposes of the case at hand, is often invoked in the context of broad discovery requests made in employment discrimination cases. See, e.g., Onwuka v. Federal Express Corp.,

4

> 178 F.R.D. 508, 516 (D.Minn. 1997); see also In re Convergent Tech. Securities Litigation, 108 F.R.D. 328, 331 (N.D. Cal. 1985)(once the threshold requirement of relevance is established, "counsel also must make a common sense determination, taking into account all the circumstances [and] that the information sought is a sufficient potential significance to justify the burden the discovery probe would impose, that the discovery tool selected is the most efficacious of the means that might be used to acquire the desired information (taking into account cost effectiveness and the nature of the information being sought…").

Moore, 2007 U.S. Dist. LEXIS 88649, at *8-11. The Moore court further held that:

> At the risk of overgeneralizing, the majority of courts which have addressed similar issues in employment discrimination cases presume that if hiring decisions are made locally, discovery should generally be restricted to the same level. Thus, "[t]he clear guidance provided by these cases is that discovery may appropriately be limited to employment units, departments and sections in which employees similarly situated to plaintiff are employed." Obiajulu v. City of Rochester, Department of Law, 166 F.R.D. 293, 296 (W.D. N.Y. 1996), citing, inter alia, Scales v. J.C. Bradford & Co., 925 F.2d 901 (6th Cir. 1991). This [c]ourt has applied those principles generally to limit discovery about hiring decisions at a local unit of a national company to that local unit unless there is evidence that the hiring decisions were made either regionally or nationally, as opposed to locally, or unless there is evidence that there were regional or national policies in place germane to those decisions. See, e.g., Barr v. Smith & Wollensky Restaurant Group, 238 F.R.D. 222 (S.D. Ohio 2006)(Kemp, M.J.). Additionally, the [c]ourt may limit such discovery not only to the geographic regions and employment units or departments which are most relevant to the plaintiff's claim, but also to a window of time surrounding the hiring decisions. See Miller v. Federal Express, 186 F.R.D. 376 (W.D. Tenn. 1999).

Moore, 2007 U.S. Dist. LEXIS 88649, at *14-15. The Court finds this reasoning persuasive and adopts it herein.

Applying this jurisprudence to the instant case, the Court finds that company-wide discovery would result in a significant burden to the defendant, thus the Court must balance that burden against the competing interests described above. The Court finds that the balance weighs in favor of

5

allowing limited discovery. As the Court noted above, the requested discovery is relevant to the plaintiffs' claims. The Court further finds that the benefit the plaintiff will obtain from limited discovery outweighs the burden placed on the defendant. The Court does not find, however, that the benefit of unlimited, company-wide discovery outweighs the burden placed on the defendant, thus the scope of discovery will be limited in this case.

The Court finds that, for the purposes of discovery, based upon the evidence before it, the primary decision makers behind the termination of Mrs. Grissom were the local Store Manager, the District Manager, the District Meat Supervisor, and a Loss Prevention Officer. In light of this finding, the Court further finds that the requested discovery should be limited those employees falling under the chain of management of the District Manager and District Meat Supervisor.[1] Given the involvement of these regional executives, the Court finds that discovery extending beyond the single unit where Mrs. Grissom worked is appropriate, but does not find, based on the record before it, that the brief involvement of a high level executive is sufficient for company-wide discovery. After conducting regional discovery, should the plaintiffs uncover compelling evidence of a company-wide pattern of discrimination, the plaintiffs may seek leave of the Court to expand the scope of discovery at that time.

In so ruling, the Court recognizes the burden placed on Defendant by such discovery. The Court is also aware of the volume of discovery previously produced by Defendant in this matter. The Court considered such factors in performing the balancing test described above, and, as the

---

[1]The Court assumes that the District level managers have lower level managers performing the actual day to day supervision of employees, and that only these lower level managers actually fall under the direct supervision of the District managers. The Court's ruling includes all employees falling within this assumed chain of management, not just those employees directly supervised by the District level managers.

6

Court noted above, the balance weighs in favor of allowing limited regional discovery.

Accordingly, the plaintiffs' motion [Doc. 32] is hereby **GRANTED** to the extent that the plaintiffs may obtain:

(1) the personnel files of employees under the chain of management of the District Manager and District Meat Supervisor who were terminated within one year of Mrs. Grissom for a violation of company policy;

(2) a list of the specific reasons for the termination of employees under the chain of management of the District Manager and District Meat Supervisor who were terminated for the violation of company policy from June 1, 2005, to June 1, 2007;

(3) annual stop loss reports for the years 2002 through 2006, but only as to the employees under the chain of management of the District Manager and District Meat Supervisor and, if not already produced, the personnel files of such employees;

(4) the requested information as to Marlene Pallas.

The Court further finds that, given the private and confidential nature of the information in question, any information produced pursuant to this Order should fall within the scope of a protective order similar to that previously entered in this case. [Doc. 40] A review of that Protective Order reveals that it appears to be limited to a narrow class of documents, a class of documents which may not cover all of the discovery allowed above. Accordingly, the parties are **DIRECTED** to meet and confer to determine whether an additional protective order is needed to adequately protect the privacy interests of any individuals affected by this Order, and, if additional protection is needed, the parties shall submit an agreed protective order on or before **October 15, 2008**. The defendant shall have until and including **October 31, 2008**, to produce the discovery in question. To the extent that the defendant may have already produced portions of the discovery described above, the defendant need not produce such discovery again.

The Court also notes the contested circumstances surrounding the alleged agreement

7

Case 3:07-cv-00060   Document 57   Filed 10/02/08   Page 7 of 8   PageID #: 1356

previously reached by the parties and the alleged reversal of position as to that agreement by the defendant. The Court is not, at this point, interested in the details of such conflict, nor does the Court allocate blame. Going forward, however, the Court does expect all counsel in this matter to work together as professionals as necessary to see this litigation through to its final determination. The defendant's request for an award of fees as to the instant motion is **DENIED**, as the Court finds no reasonable basis for such request.

Accordingly, the plaintiffs' motion [Doc. 32] is **GRANTED** to the extent set forth above. Should the parties prove unable to reach agreement as to the need or content of an additional protective order, or should the defendant believe that it cannot produce the discovery in question in the time allotted, the parties are **DIRECTED** contact chambers to schedule a telephone conference.

**IT IS SO ORDERED.**

ENTER:

    s/ H. Bruce Guyton    
United States Magistrate Judge